# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **TIQUILA SOPHORNIA BROWNING,** | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Case No.: 2:11-CV-1602 <br> ) |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,** | ) <br> ) <br> ) <br> ) <br> ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Tiquila Sophornia Browning ("Ms. Browning") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), who denied her application for Supplemental Security Income ("SSI"). Ms. Browning timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[1]

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Browning was a 35-year-old female at the time of her hearing before the administrative law judge (hereinafter "ALJ"). (Tr. 24). She has a high school education. (Tr. 36). Her past relevant work experiences include employment as a proof machine operator and a hospital cleaner. (Tr. 59). Ms. Browning claims she became disabled on May 19, 2008,[2] due to limitations related to bipolar disorder and hypertension.[3] (Tr. 18, 34–35, 63). Her last period of work ended on May 19, 2008. (Tr. 18).

Ms. Browning filed her application for SSI on May 22, 2008. (Tr. 105–08). The Regional Commissioner denied her claim on June 28, 2008. (Tr. 67–71). On August 12, 2008, Ms. Browning timely requested a hearing (Tr. 74), which was held on January 19, 2010, in Birmingham, Alabama. (Tr. 16). The ALJ concluded that Ms. Browning was not disabled and issued his written decision denying her application for benefits on March 25, 2010. (Tr. 16–25). The ALJ's decision denying benefits became the final decision of the Commissioner when the Appeals

---

[2] Ms. Browning amended her alleged onset date at the hearing. (See Tr. 16, 34).

[3] The ALJ noted in his decision that Ms. Browning "admitted at the hearing that her hypertension is now well controlled with prescribed medication" (Tr. 18) and "should cause her no exertional limitations." (Tr. 22; *see also* Tr. 54-55). Ms. Browning does not raise any challenges on appeal to the ALJ's determination concerning her hypertension, so the court – like the ALJ – focuses its analysis only on Ms. Browning's bi-polar disorder.

Council denied Ms. Browning's request for review on March 16, 2011. (Tr. 1–6).

Ms. Browning filed her Complaint on May 13, 2011, which asks this court to review the ALJ's decision. (Doc. 1). This court has carefully considered the record and affirms the decision of the ALJ.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).

If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

>  (1)   whether the claimant is currently employed;
>  (2)   whether the claimant has a severe impairment;
>  (3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
>  (4)   whether the claimant can perform her past work; and
>  (5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found that Ms. Browning has not engaged in substantial gainful activity since May 19, 2008. (Tr. 18). He also found that the medical evidence supported a finding that Ms. Browning's impairments of bipolar disorder and

hypertension were considered "severe" according to 20 C.F.R § 416.920(c). (Tr. 18). The ALJ then held that those medically determinable impairments, in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 Appendix 1, Subpart P, of the Social Security Regulations. (Tr. 18).

After "careful consideration of the entire record," including the report of the state agency reviewing psychiatrist and Ms. Browning's testimony,[5] the ALJ found

> that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can concentrate on simple 1-2 step tasks for 2 hour periods in the course of a regular 8 hour workday. The claimant is able to interact on a limited basis with the public and co-workers, and can accept non-threatening direct supervision. Work demands should be mostly routine, and changes in the work place should be infrequent and gradually introduced. The claimant can make adequate simple work place decisions and plans reliably.

(Tr. 20).

The vocational expert testified that, given these limitations, Ms. Browning would be precluded from returning to her past relevant work in light of her age, education, work experience, and residual functional capacity. (Tr. 59). The ALJ agreed and concluded that Ms. Browning's impairments prevent her from performing her past relevant work. (Tr. 23). However, the vocational expert testified that a

---

[5] The ALJ expressly found that Ms. Browning's testimony concerning her disabling limitations was not credible. (Tr. 22–23).

hypothetical individual having the same age, education, work experience, and residual functional capacity set out above could work in certain occupations such as laminator (sedentary and unskilled), assembler (light and unskilled), or food packaging machine operator (light and unskilled). (Tr. 60–61). He further testified that there were jobs available in the national and local economies in those types of positions and stated "there would be others as well." (*Id.*).

In reaching his conclusion of "not disabled," the ALJ considered the vocational expert's testimony as well as the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (hereinafter "grids"), which he referenced as a framework for his decision. (Tr. 24–25). The ALJ acknowledged that Ms. Browning had certain non-exertional limitations that compromised her ability to perform unskilled work "at all exertional levels." (Tr. 24). Nevertheless, using the grids and Rule 204 as a framework for decision-making and considering the vocational expert's testimony, the ALJ concluded that Ms. Browning was "capable of making a successful adjustment to other work that exists in significant numbers in the economy." (Tr. 24–25). Accordingly, the ALJ determined that Ms. Browning was not eligible for SSI because she was "not disabled" under § 1614(a)(3)(A) of the Social Security Act.

## **ANALYSIS**

The court can reverse a finding of the Secretary if it is not supported by

substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[6] Ms. Browning makes two arguments on appeal. She first asserts that "the ALJ has failed to recognize [her] non-compliance as an element of her mental health issues and diagnosis." (Doc. 9 at 7). Because of "this significant error," she contends that the ALJ's decision "should be reversed and benefits awarded." (*Id.* at 8). Second, she argues that "[a]t the very least the ALJ should have ordered a consultative evaluation with a psychiatrist or psychologist rather than relying on the non-examining physician mental RFC contained in the claim file." (*Id.* at 9). As such, she requests in the alternative that her case be remanded "for a full and proper consideration of the medical evidence of record, including the opinion of the consultative examiner." (Doc. 9 at 11).

In its review, this court finds that the ALJ's decision was supported by substantial evidence and applied the correct legal standards.

**I.     THE ALJ PROPERLY CONSIDERED THE MEDICAL**

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**EVIDENCE OF RECORD, INCLUDING MS. BROWNING'S NON-COMPLIANCE, AND HIS DECISION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE REGARDLESS.**

Ms. Browning first asserts that the ALJ committed reversible error by failing to properly consider the medical evidence of record because he should have recognized her non-compliance with treatment as "an element of her mental health issues and diagnosis." (Doc. 9 at 7). She submits that the ALJ's failure to properly consider her non-compliance "amounts to an over-simplification of an important mental health issue." (*Id.*).

To support her argument on this ground, Ms. Browning relies on the fourth edition of the <u>Diagnostic and Statistical Manual of Mental Disorder</u> (the "manual") produced by the American Psychiatric Association (the "APA"). However, the APA's manual, which is not readily accessible by this court,[7] is not binding authority. Significantly, Ms. Browning cites to no controlling Supreme Court or Eleventh Circuit case that supports her contention that the ALJ erred in his analysis of Ms. Browning's non-compliance. The only somewhat relevant case she cites to quotes dicta from an opinion by Judge Guin of the Northern District of Alabama[8] that

---

[7] Ms. Browning does not provide a copy of the APA's manual, nor does she provide a reference link by which the court may access the manual.

[8] The opinions of other district court judges, even in the Northern District of Alabama, are not binding on this Court. *See, e.g.*, *Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., Ltd.*, 240 F.3d 956, 965 (11th Cir. 2001) ("[T]he district court cannot be said to be bound by

laments: "Sadly, the symptoms of mental disorders often include the inability to seek out the treatment and help necessary to treat such disorders." *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1255 (N.D. Al. 2003). While the court agrees with that statement, it does not constitute a holding or binding legal precedent.

Without more, Ms. Browning's underdeveloped argument is not enough to persuade the court that the ALJ committed a "significant error" in this case that mandates reversal. The court reminds Ms. Browning that its review is narrowly circumscribed and focused only on whether the Commissioner's decision is supported by "substantial evidence" and whether he applied proper legal standards. *Richardson*, 402 U.S. at 390; *Wilson*, 284 F.3d at 1221. Further, the court is not bound to address perfunctory and underdeveloped arguments. *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

Nevertheless, the court has reviewed the Commissioner's decision in light of Plaintiff's concern that "[t]o deny an individual diagnosed with mental health issues

---

a decision of one of its brother or sister judges," although such decisions may be persuasive).

based on non-compliance is inappropriate unless there is direct opinion evidence from a treating, examining, or consultative source indicating that the non-compliance was somehow voluntary, and not related to mental illness itself." (Doc. 9 at 7-8). Because Ms. Browning points the court to no legal authority that supports her argument on this point, and the court has not been able to independently locate any such authority, the court cannot say that the ALJ committed legal error by factoring her non-compliance into his analysis. However, the court notes that, non-compliance aside, the ALJ's decision was nevertheless supported by other substantial evidence.

As an important initial observation, which the Commissioner correctly noted, the ALJ did not find Ms. Browning not disabled *because of* her non-compliance; instead, he properly considered the medical evidence of Ms. Browning's bi-polar disorder and found it to be a severe impairment. (Tr. 18). The ALJ only noted Ms. Browning's history of non-compliance when he assessed her credibility (Tr. 20-23) and determined that her condition was not as disabling as she claimed. Moreover, the ALJ's mention of her non-compliance was but one of *multiple* factors influencing his credibility determination. (*See, e.g.* Tr. 23 (citing "various inconsistencies between [Ms. Browning]'s allegations at the hearing and her statements to her treating care providers throughout the medical evidence of record"). For instance, the ALJ noted Ms. Browning's testimony at the hearing that she had not sought employment since

her last job, while the records indicated she was engaged in an active search. (Tr. 23). He also noted that she claimed at the hearing that "she essentially engaged in no activities of daily living and had been at this (non-)activity level since her claim was filed." (Tr. 22). The ALJ found that the record supported a different conclusion, as Ms. Browning had "previously reported a wide range of daily activities (including the care of her young children) and was medically reported as carrying out all activities of daily living with no assistance." (Tr. 22-23). And, further, the ALJ found Ms. Browning's testimony not credible because she claimed that her medications were "not working" and "causing debilitating side effects" and that her "symptoms [were] worsening," but those claims went against the weight of the medical evidence, which reflected statements of Ms. Browning to her doctors that her medications "were doing a good job" and "had no side effects" as of March 13, 2009, which pre-dated her non-compliance issues. (Tr. 23). She gave a similar report about the absence of side effects on October 9, 2009, following her brief period of non-compliance. (Tr. 23). For these reasons and more, the ALJ found that the medical record "militate[d] against the credibility" of Ms. Browning's testimony about the disabling limitations of her condition. (Tr. 23).

The court has reviewed the medical records and determines that they substantially support the ALJ's negative credibility determination. (*See* Tr. 214-16,

231, 259, 277). Thus, even if Ms. Browning could point the court to an appropriate legal authority that supports her position about the manner in which non-compliance must be considered by an ALJ, the ALJ's decision in this case would nevertheless stand to be affirmed because it was supported by substantial evidence independent of the non-compliance factor.

## II. THE ALJ DID NOT COMMIT REVERSIBLE ERROR BY FAILING TO ORDER A CONSULTATIVE EXAMINATION.

Alternatively, Ms. Browning contends that this case should be remanded because in light of her "multiple episodes of decompensation requiring hospitalization and intervention," the ALJ at least "should have ordered a consultative evaluation with a psychiatrist or psychologist rather than relying on the non-examining physician mental RFC contained in the claim file." (*Id.* at 9). Implicitly, therefore, she argues that the ALJ failed to fully and fairly develop the record by not ordering a consultative evaluation. Based on the legal standards set out below, the court disagrees. Additionally, the court addresses several misleading aspects of Ms. Browning's argument.

First, Ms. Browning exaggerates her claim of "multiple episodes of decompensation requiring hospitalization and intervention." According to the medical record, she underwent two episodes of decompensation, but only one

occurred within the time frame of her alleged disability. The disability onset date alleged by Ms. Browning at the hearing was May 19, 2008. The first documented episode of decompensation occurred prior to her alleged onset date, lasting from October 13, 2007, to November 6, 2007, when she was admitted to Trinity Medical Center following her father's passing after a battle with chronic illness. The second episode of decompensation lasted from August 1, 2009 to August 14, 2009, when she was hospitalized again at Trinity Medical Center for a severe headache and diagnosed relapse of her bipolar disorder. The second episode followed a suspected miscarriage.

Second, the ALJ's written decision reveals that he did not exclusively rely on the state agency psychiatric consultant's report in determining Ms. Browning's RFC. While he did give that doctor's findings "substantial weight" because he found them to be "internally consistent and consistent with the evidence as a whole" (Tr. 23), he also relied on the totality of medical records surrounding Ms. Browning's episodes of decompensation and follow-up treatment. For instance, he described and relied on the treatment notes and medical records from Ms. Browning's two treating physicians, Dr. Romaine Hain, M.D., and Dr. Sylvia A. Subong-Chambers, M.D. (Tr. 21–22). The ALJ also relied on the treatment notes and records of Ms. Browning's therapist, Gary Stockdale of Eastside Mental Health Center. (*Id.*). He described each of Ms. Browning's visits and the resulting progress notes in detail in his decision.

The sum of Ms. Browning's argument as to the necessity of ordering a consultative evaluation is as follows:

> The ALJ should have at least considered developing the record to obtain a medical source opinion by ordering his own consultative examination pursuant to 20 C.F.R. 416.919a. The ALJ's duty to develop the record includes obtaining a consultative examination when one is needed to make an informed decision. *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984).

(Doc. 9 at 10). She does not proceed to explain, however, why a consultative examination "is needed to make an informed decision" in this case.

The SSA Regulations permit the ALJ to order a consultative examination when the claimant's medical sources cannot or will not give sufficient medical evidence regarding the claimant's impairment to make an informed decision regarding disability. 20 C.F.R. §§ 404.1517, 416.919 *et seq.* Ms. Browning correctly cites *Reeves* for the proposition that "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Reeves*, 734 F.2d at 522 n.1; *see also Caulder v. Bowen*, 791 F.2d 872, 878 (11th Cir. 1986) ("Consultative examinations are not required by statute, but 20 C.F.R. § 404.1517 provides for them where warranted."). However, the Eleventh Circuit has also held that the ALJ's duty to develop the record does not include ordering a consultative examination when the record contains "sufficient

evidence" upon which the ALJ can make an "informed decision." *Ingram v. Comm'r of Social Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

Based on the wide range of medical evidence the ALJ relied on in this case—from Ms. Browning's treating physicians and her therapist as well as the non-examining consulting psychiatrist—the court finds that another consulting examination was not needed in this case because the record contained sufficient evidence upon which the ALJ was able to make an informed decision. (*See* Tr. 192-205, 208-11, 214-16, 219-59, 262-77). Additionally, the court notes that Ms. Browning's counsel did not request a consulting examination during the hearing, and no other physician in the record recommended a consulting examination. *Cf. Moorer v. Astrue*, Case No. 5:07-cv-1433-VEH, Doc. 11 at 7-8 (N.D. Ala. Mar. 28, 2008) (noting that the "non-attorney representative requested that the ALJ order an orthopedic and psychological examination on account of missing emergency room records and other medical records that [the claimant] had been unable to obtain prior to his hearing"); *Reeves*, 734 F.2d at 522 (noting that "the ALJ failed to order a consultative examination by an orthopedist even though the SSA's consulting doctor recommended such an evaluation"); *Good v. Astrue*, 240 Fed. App'x 399, 404 (11th Cir. 2007) (holding that where "no other physician recommended an additional consultation, and the record was sufficiently developed for the ALJ to make a

determination . . . the ALJ need not order an additional consultative examination where the record was sufficient for a decision").

As to Ms. Browning's implicit argument that the ALJ failed to fully and fairly develop the record, she has not met her burden of proving that a remand is merited on this ground. Although an ALJ "has a basic obligation to develop a full and fair record," the Eleventh Circuit has held that "[t]here must be a <u>clear showing of prejudice</u> before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development." *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997) (emphasis added); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Here, Ms. Browning has not even argued that there has been a clear showing of prejudice, much less has it been demonstrated. Given the depth and explicitness of the ALJ's consideration of the available medical evidence, there is substantial evidence that the ALJ fully and fairly developed the record.

Therefore, the ALJ's decision was an informed one based upon sufficient facts, and there was no reversible error in his failure to order a consultative examination. As such, the court does not find that remand is necessary or appropriate in this case. The court instead finds that the ALJ satisfied his duty to develop the record, and that his decision is supported by substantial evidence in the medical record.

17

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 23rd day of April, 2012.

                                                  **VIRGINIA EMERSON HOPKINS**
                                                  United States District Judge